IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---------------------------------------------------- :
                                                     : CASE NO. 1:09 CV 1760
KATHLEEN G. KUNKLE,                                  :
                                                     :
                                        Plaintiff,   : <u>MEMORANDUM OPINION AND</u>
                                                     : <u>ORDER DENYING THE PLAINTIFF'S</u>
                       -vs-                          : <u>MOTION FOR PRELIMINARY</u>
                                                     : <u>INJUNCTIVE RELIEF AND DENYING</u>
                                                     : <u>THE PLAINTIFF'S MOTION FOR</u>
OHIO DEPARTMENT OF                                   : <u>LEAVE TO AMEND</u>
REHABILITATION AND CORRECTION,                       :
MANSFIELD CORRECTIONAL
INSTITUTION,
                                       Defendant.
----------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

　　Before the Court is a motion for a preliminary injunction filed by the plaintiff Dr. Kathleen G. Kunkle. (Doc. 20). Dr. Kunkle asks that the Court enjoin her employers from reassigning her to a newly created, less desirable position. She maintains that by reassigning her, the defendant employers are retaliating against her for having brought this Title VII suit. The defendants Mansfield Correctional Institution (ManCI) and the Ohio Department of Rehabilitation and Correction (ODRC) have filed an opposition, and Dr. Kunkle has replied. (Doc. 21). The defendants also motion the Court for summary adjudication of plaintiff's motion. (Doc. 21). Dr. Kunkle filed a response and the

defendants have replied. (Doc. 22; Doc. 23). For the reasons that follow the Court will deny the plaintiff's motion.

**I. Background**

The plaintiff Dr. Kathleen Kunkle, a licensed psychologist employed by the Ohio Department of Rehabilitation and Correction ("ODRC"), provides clinical and psychotherapeutic services to inmates at the Mansfield Correctional Institution ("ManCI"). (Doc. 1, ¶¶4,7). According to Dr. Kunkle, the inmates whom she treats frequently threaten and harass her and engage in other offensive behaviors that prevent her from adequately doing her job at ManCI. (Doc. 1, ¶23). She states that she has properly reported these incidents to her supervisors and has repeatedly requested that the issue be addressed. She further alleges that her complaints have been ignored and that the defendants have failed to enforce policies that curtail these practices. (Doc. 1, ¶5).

On 29 July 2009, Dr. Kunkle filed a complaint against ODRC, ManCI, and various state officials, alleging violations of state and federal law.[1] (Docket No. 1). Specifically she alleged that the defendants' failure to properly respond to the inmates' threatening and abusive behavior toward her amounts to gender based discrimination and sexual harassment in violation of Title VII. (Doc. 1, ¶5). She also alleges that she has experienced severe and pervasive sexual harassment by fellow employees and supervisors, and that she has been deterred and discouraged from reporting these

---

[1] On 10 December 2009, the Court dismissed the individual defendants and the state law claims. (See Docket No. 10).

2

incidents. (Doc. 1). Her complaint further maintains that the defendants retaliated against her in violation of Title VII by threatening her with discharge; intimidating her; demoting her; issuing an unwarranted and atypical performance evaluation; demanding a mandatory psychological assessment; placing her on temporary administrative leave; and placing her in harm's way by not offering security to assist her in carrying out her job. (Doc. 1, ¶6).

On 28 June 2010, Dr. Kunkle filed an *ex parte* motion for a temporary restraining order that would have enjoined the defendants from allegedly retaliating against her by reassigning her to "a newly created, less desirable, and unnecessary employment position." (Doc. 19). Her motion was denied. At the same time, she also filed the pending motion for a preliminary injunction seeking the same relief.[2] (Doc. 20). The defendants oppose her motion and seek summary adjudication of this question. (Doc. 21).

According to the defendants, Dr. Kunkle's reassignment arose out of the need to address the increasing number of Clinical Risk Assessments ("CRAs") that must be performed for inmates before their cases are heard by the Ohio Adult Parole Authority. (Doc. 21-1 ¶4). The defendants state that the increasing demand for CRAs has been

---

[2]On 8 July 2010, after the close of briefing, Dr. Kunkle filed for leave to amend her motion pursuant to Federal Rule 15(a)(2). This motion will be denied. First, Rule 15(a)(2) is mechanism for amending a pleading not a motion. Second, "[a]ny affidavit supporting a motion must be served with the motion." Fed. R. Civ. P. 6(c)(2). Although she argues that the substance of her amendment was unknown to her at the time she initially filed, the date she chose to motion the Court was within her control. Furthermore, Dr. Kunkle could have waited to file her response to the defendants' request for summary adjudication. However, she did not wait, and the parties' motions became ripe for consideration on 6 July 2010.

3

interfering with the ability of institutional psychologists to manage their caseloads. (Doc. 21-1 ¶4). In order to relieve this burden, the defendants plan to institute a pilot program whereby two or three psychologists would be detailed exclusively to perform CRAs throughout the state, allowing the remaining psychologists to concentrate on their institutional caseloads. (Doc. 21-1 ¶4).

Dr. Kunkle is the first and only psychologist to be chosen for the pilot program, although the defendants expect that more will be added over time. (Doc. 21-1 ¶5). They state that Dr. Kunkle was chosen to pilot the program because she presently works from ManCI, whose central location would allow them to provide the best coverage around the state. The defendants further state that because Dr. Kunkle has a great deal of clinical experience she is well suited to performing CRAs, which relies strongly on clinical judgment skills. (Doc. 21-1 ¶6). The defendants also expect that Dr. Kunkle will be far less likely to experience the inappropriate, offensive, and disrespectful inmate behavior at issue in this case, since inmates whose cases are to be considered by the Adult Parole Authority have every incentive to be on their best behavior. (Doc. 21-1 ¶7). Dr. Kunkle, for her part, questions the defendants' stated reasons for the reassignment and maintains that the transfer amounts to retaliation for having brought this suit. (Doc. 19-1).

The defendants expect Dr. Kunkle to perform at least fifteen CRAs per month. Each CRA normally takes between four and six hours to perform. (Doc. 21-1 ¶8; Doc. 23-1 ¶5). In order to carry out her duties, Dr. Kunkle will be required to travel to facilities in ODRC's north region, which essentially comprises the top half of the State of Ohio.

4

Dr. Kunkle may be required to travel four out of five days of the week, up to three hours away from her home.  (Doc. 19-1).  In the future the defendants may require Dr. Kunkle to perform CRAs in the southern region.  The defendants expect that Dr. Kunkle will be able to perform the required number of CRAs, while taking travel time into account.

According to the defendants, Dr. Kunkle's reassignment will result in no material loss of benefits or status, and her pay will remain the same.  (Doc. 21-1 ¶10).  Dr. Kunkle does not contend otherwise.  Her report-in location will remain in Richland County, Ohio, but possibly not at ManCI.  Although travel will be required in her new position, it will occur on work time.  Dr. Kunkle will be provided a state-owned vehicle or, if one is not available, will be reimbursed for the use of her vehicle.  (Doc. 21-1 ¶10).

Dr. Kunkle contends that her reassignment is in retaliation for the present lawsuit and that she is entitled to injunctive relief because she has shown "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued."  (Doc. 20-1).

**III. Preliminary Injunction Standard**

When deciding whether to issue a preliminary injunction, the district court considers the following four factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

5

McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453, 459 (6th Cir.1997) (en banc) (quoting Sandison v. Michigan High Sch. Athletic Ass'n, 64 F.3d 1026, 1030 (6th Cir.1995)). These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction. See United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth., 163 F.3d 341, 347 (6th Cir.1998); McPherson, 119 F.3d at 459.

The nature and purpose of preliminary injunctions also inform the court's analysis. As the Supreme Court has stated:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing.

University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). Therefore, the findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits. Id.

**III. Law and Argument**

    **A. Likelihood of success on the merits**

In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success. See Mason County Med. Ass'n v. Knebel, 563 F.2d 256, 261 n. 4 (6th Cir.1977). However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and

6

doubtful as to make them a fair ground for litigation and thus for more deliberate investigation. See In re DeLorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985).

In order to prevail on the merits of her Title VII retaliation claim, Dr. Kunkle would be required to demonstrate by a preponderance of the evidence that: 1) she engaged in activity that Title VII protects; 2) the defendant knew that she engaged in this protected activity; 3) the defendant subsequently took an employment action adverse to the plaintiff; and 4) a causal connection exists between the protected activity and the adverse employment action. Abbott v. Crown Motor Co., Inc., 348 F.3d 537, 542 (6th Cir. 2003). The parties do not dispute the merits of the first two elements. Rather, their arguments, for the purposes of this motion, at least, are focused on whether the reassignment amounts to an adverse employment action causally related to the protected activity.

Dr. Kunkle maintains that her reassignment is a materially adverse employment action because "the duties and expectations that would be forced upon [her] . . . are far less favorable than the duties and expectations of her current position." (Doc. 20-1 at 5). She points out that she currently works out of one institution located a short distance from her home, but the new position would have her working out of thirteen different institutions located up to two or three hours away. She claims that the unreasonable amount of travel required in the new position is punitive in nature, and that by requiring her to perform more work than is reasonable, the defendants are guaranteeing themselves a means by which they might ultimately fire her.

7

The defendants maintain that Dr. Kunkle's reassignment is more favorable than her previous assignment since she would no longer be required to interact with inmates whom she claims create a "hostile, offensive, and abusive work environment."  Rather, her new assignment requires her to perform Clinical Risk Assessments of inmates whose cases are to be heard by the Ohio Adult Parole Authority.  The defendants suggest that because one would expect the latter inmates to be better behaved than the former, Dr. Kunkle's new position cannot be construed as an adverse employment action.  The defendants further argue that her reassignment will not result in a material loss of pay, benefits, or status.

"An adverse employment  action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment  with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).  An adverse employment action is a "materially adverse change in the terms and conditions of ... employment."  Smith v. City of Salem, Ohio, 378 F.3d 566, 575 (6th Cir.2004) (quoting Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir.1999)).

The Court is persuaded by the defendants' arguments that there is an absence of substantial and serious questions as to whether her reassignment amounts to an adverse employment action.  Dr. Kunkle's reassignment does not come with a decrease in pay or benefits, and the responsibilities associated with the new position do not

8

appear to be significantly different from her current position.³  Her primary complaint seems to be the additional travel time being imposed upon her.  However, given that the additional driving will be on work time, and that her employer will provide her with a car, or reimburse her for use of her own, it is difficult to see how this aspect of her reassignment is adverse.  Most courts that have considered the question have concluded that a longer commute does not amount to an adverse employment action.  See, e.g., Sanchez v. Denver Pub. Sch., 164 F.3d 527 (10th Cir. 1998) (holding that reassignment which increased employee's commute time from five or seven minutes to between thirty and forty minutes does not amount to an adverse employment action); Burnette v. Northside Hosp., 342 F. Supp. 2d 1128, 1136-1137 (D. Ga. 2004)(lateral transfer that increases commute one to one-and-a-half hours fails to qualify as an adverse employment action); Johnson v. Eastchester Union Free Sch. Dist., 211 F. Supp. 2d 514, 517-18 (S.D.N.Y. 2002)(plaintiff's "mere dissatisfaction" with reassignment, based on "inconvenience of the change in location," was not actionable as adverse employment decision).

Moreover, Dr. Kunkle's concerns about her new position are largely unsubstantiated and speculative.  For example, she theorizes that because she may not be able to manage her new responsibilities, given "the unreasonable amount of travel

---

³  Dr. Kunkle alleges that her new position involves responsibilities normally delegated to psychology assistants, but she offers nothing of substance, whether by affidavit or otherwise, to back up this proposition.  However, even if there were a genuine issue of fact that might foreclose summary adjudication on this point, Dr. Kunkle's failure to make a case for irreparable harm, as discussed below, would still result in a denial of her motion.

9

time," the defendants may ultimately have grounds to fire her. This sort of allegation is simply not sufficient to raise a serious and substantial question on whether the defendants have taken an adverse employment action against her. Her allegations do no more than show a mere possibility of success. See Knebel, 563 F.2d at 261 n. 4 (6th Cir. 1977).

Therefore, because Dr. Kunkle's arguments either fail as a matter of law or rely on speculation, she has not established a likelihood of success on the merits of her claim.

### B. Irreparable Harm

Dr. Kunkle bears the burden of demonstrating by a clear showing that irreparable harm will occur. Garlock, Inc. v. United Seal, 404 F.2d 2565 (6th Cir. 1968). Plaintiffs seeking preliminary relief must demonstrate that irreparable injury is likely in the absence of an injunction. Los Angeles v. Lyons, 461 U.S. 95, 103 (1983). The character of that harm must be "actual and imminent" rather than speculative or unsubstantiated. Abney v. Amgen, Inc., 443 F.3d 540 (6th Cir. 2006). Although the Sixth Circuit has never held that such a showing is a necessary condition for a preliminary injunction, "equity has traditionally required such irreparable harm before an interlocutory injunction may be issued." EEOC v. Anchor Hocking Corp., 666 F.2d 1037(6th Cir. 1981).

In the employment context, a discharged employee must meet a high standard for obtaining preliminary injunctions restraining termination of employment. Sampson v. Murray, 415 U.S. 61 (1974). "The type of irreparable injury required must really depart

10

from the harms common to most discharged employees.  Id. at 92.  Humiliation, damage to reputation, and loss of income related to a wrongful employment action typically do not rise to the level of "irreparable" to warrant a preliminary injunction.  Id.

Dr. Kunkle seems to concede that under this standard she cannot demonstrate irreparable harm, since not only is she still employed by ODRC, she has suffered no loss of income or benefits.  (See Doc. 20-1, p. 7).  Moreover, pursuant to Sampson, any loss of prestige that might be associated with her reassignment is not legally significant.  In this Court's view, even if every speculative and unsubstantiated allegation made by Dr. Kunkle were proven true, her situation would not rise to the level of irreparable harm.  The plaintiff may be displeased with the prospect of her reassignment and the uncertainties related to taking on this new position, but her displeasure provides no grounds for injunctive relief.

Dr. Kunkle maintains that she can make a showing of irreparable harm under an alternative theory.  She argues that retaliation for the exercise of protected rights is itself irreparable harm, because her fellow employees might be deterred from protecting their rights under Title VII.  She contends that the mere risk of this chilling effect is sufficient to establish irreparable harm as to her.  This proposition is based on the law of the Ninth Circuit, which allows a retaliatory chill felt by third parties to qualify as an irreparable harm to a private plaintiff seeking injunctive relief.  See Garcia v. Lawn, 805 F.2d 1400, 1405 (9th Cir. 1986).  The Sixth Circuit, however, has not fully embraced this notion.  In EEOC v. Anchor Hocking, the Court of Appeals only went so far as to approve the possibility of irreparable harm *to the EEOC* where its ability to prosecute a pending

11

charge is hampered by a chill upon third party cooperation arising from the alleged retaliation. Anchor Hocking, 666 F.2d 1037, 1043 (6th Cir. 1981). Anchor Hocking does not speak to whether the "chill" felt by third parties might be an irreparable harm to a *private plaintiff.*

Even if Anchor Hocking stood for this proposition, it still would not – simply standing on its own – make Dr. Kunkle's case for her. Anchor Hocking demands that when the EEOC seeks injunctive relief in a Title VII case under this theory, it must make some showing of a retaliatory chill. It would defy logic to suggest that a private plaintiff, such as Dr. Kunkle, would be exempt from this requirement, given that the Sixth Circuit's suggestion that the EEOC has *no less* a burden to show irreparable harm than a private plaintiff in a Title VII case. See Id. at 1043. Therefore, consistent with Anchor Hocking, Dr. Kunkle must make some showing that her ability to pursue her case is impeded by the chilling effect of the alleged retaliation. Id. at 1043. She has provided no such evidence. In fact, none of the papers before the Court contain even an allegation of the existence of a chilling effect; nor has Dr. Kunkle contended by affidavit or otherwise that her efforts to prosecute her case have been hampered. The plaintiff seems to believe that the mere possibility of a chilling effect on her fellow co-workers should be enough to carry the day, but this is simply not sufficient. See Abney, 443 F.3d 540 (6th Cir. 2006)(harm must be "actual and imminent" rather than speculative or unsubstantiated).

In sum, Dr. Kunkle's allegations of irreparable harm fail as a matter of law, and no hearing is required on this issue. Even if they were proven true, her allegations do

12

not amount to an actual and imminent harm.  Because she cannot demonstrate a likely success on the merits or irreparable harm, the Court need not extend its analysis to the third and fourth factors.

### III. Conclusion

For the foregoing reasons, the plaintiff's motion for preliminary injunctive relief is hereby denied.  The plaintiff's motion for leave to amend her motion for preliminary injunctive relief is also denied.

IT IS SO ORDERED.

                                             /s/ Lesley Wells
                                        UNITED STATES DISTRICT JUDGE

Date: 13 July 2010